UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE CALDERON JAIMES (A-Number: 205-354-745),<br>Petitioner,<br>v.<br>CHRISTOPHER CHESTNUT,<br>Respondent. | Case No. 1:26-cv-6400-DAD-JDP<br><br>FINDINGS AND RECOMMENDATIONS |

In 1998, petitioner Jose Calderon Jaimes, a citizen of Mexico, entered the United States without inspection. At some point that respondent does not specify, immigration authorities released him on parole. On February 14, 2026, ICE re-detained petitioner after he was released from local custody following a state arrest that did not lead to charges. He has been detained since that date without a bond hearing. Petitioner, appearing pro se, seeks a writ of habeas corpus under 28 U.S.C. § 2241, claiming that his re-detention without a bond hearing violates due process. For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

## Background

Petitioner, a citizen of Mexico, entered the United States without permission in 1998. ECF No. 1 at 6. Respondent indicates that petitioner was paroled into the United States.[1] ECF No. 6 at 1 (". . . Petitioner was *paroled* into the United States . . .") (emphasis in original). Petitioner has lived in the United States since his entry. In 2000, he received a tax ID number so that he could report his work earnings. ECF No. 1 at 6. In 2014, he received a work permit and a social security number.[2] *Id.* Respondent does not indicate that petitioner's parole was ever revoked or argue that petitioner violated any of its terms. *See* ECF No. 6.

On January 29, 2026, local authorities arrested petitioner. ECF No. 6 at 15. On February 13, 2026, the state prosecutor elected not to file criminal charges against him arising out of that arrest. *Id.* at 18. Petitioner was re-detained after his release from the local jail on February 14, 2026. ECF No. 1 at 6; ECF No. 6 at 10. This is petitioner's only law enforcement contact since he entered the United States in 1998. ECF No. 6 at 9-13. ICE has detained petitioner since February 14, 2026, without a bond hearing. ECF No. 1 at 6. The EOIR automated case information indicates that petitioner's master hearing is on September 2, 2026. *See* https://acis.eoir.justice.gov/en/caseInformation (last checked Aug. 28, 2026).

## Legal Standard

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of

---

[1] I note that respondent has attached a Form I-213 for a different noncitizen at ECF No. 6, pages 5-8. Respondent does not attach any immigration forms related to petitioner. I draw the fact of petitioner's prior parole into the United States from respondent's filing.

[2] Petitioner's receipt of a social security number and an employment authorization form is consistent with a filed application for asylum. *See* 8 C.F.R. § 208.7.

reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner argues that his re-detention without a bond hearing violates the law.[3] ECF No. 1 at 6. Respondent argues that petitioner was "*paroled* into the United States and thus remains subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A)." *Id.* (emphasis in original.) Respondent cites no law supporting this assertion and does not address the due process implications of a prior parole into the United States except to argue that "[p]etitioner does not possess a right to freedom from immigration detention in any form other than the form provided by Congress." *Id.*

The Court of Appeals has rejected respondent's argument that section 1225(b) applies to noncitizens like petitioner who entered without inspection and are detained by ICE in the interior of the United States. *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. 2026).[4] Respondent attempts to cite *Rodriguez-Vazquez* to support its argument that a person who entered the United States in 1998 may still be treated as an "illegal border-crosser" almost thirty years later and subjected to mandatory detention under § 1225(b). *Rodriguez-Vazquez*'s discussion of "illegal border-crossers" is not applicable to someone who is detained by ICE long after that entry: "Aliens illegally crossing the border are, of course, at that time seeking 'entry.' But contrary to the government, this does not lead to the conclusion that aliens . . . who are seeking relief in immigration proceedings inside the United States are also 'seeking admission,' that is, seeking 'entry' into the United States." *Id.*, 183 F.4th at 1182. Respondent ignores the holding of *Rodriguez Vazquez*: "aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." *Id.* at 1165.

---

[3] Petitioner's pro se filing is entitled to liberal construction. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Charan S. v. Warden of the Cal. City Det. Facility*, No. 1:26-cv-3017-TLN-JDP, 2026 WL 1144158, at *1 n.1 (E.D. Cal. Apr. 28, 2026) (applying liberal construction to pro se immigration habeas filing).

[4] Because the mandate has yet to issue, the court takes advisory notice of this ruling. *See* Fed. R. App. Pro. 41.

This squarely applies to petitioner's circumstances. Accordingly, the court finds that 8 U.S.C. § 1225(b) is not a proper basis for petitioner's detention.

Respondent states that petitioner was previously paroled into the United States. ECF No. 6 at 1. Accordingly, I apply the procedural due process analysis that I have previously used in circumstances where a noncitizen has been released into the United States. The court engages in a two-part inquiry: first, a court must consider whether there exists a protected liberty interest under the Due Process Clause, and, second, a court must evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). I consider each in turn.

Courts in this Circuit have repeatedly found that noncitizens released from immigration custody acquire a liberty interest in their continued release. *See, e.g.*, *Labrador-Prato v. Noem*, No. 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *5 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-0379-SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)).

Respondent states that petitioner was previously paroled into the United States. ECF No. 6 at 1. Petitioner's initial release and time out of custody have created a substantial constitutionally protected liberty interest in continued release. *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests); *see also Capote v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-3168-JLT-EPG, 2026 WL 1415306, *2 (E.D. Cal. May 20, 2026) (granting writ of habeas corpus where petitioner had been previously paroled into the United States pursuant to the Cuban Humanitarian Parole program).

Accordingly, I must next determine what procedural protections the government should

have afforded petitioner before depriving him of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his continued release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner acquired a private interest in continued release during the time he has spent on immigration parole in the United States.[5] *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Second, a pre-deprivation bond hearing in immigration court would have addressed that interest, and the risk of erroneous deprivation without a bond hearing is high. Prior to releasing petitioner into the United States, respondent necessarily determined that he presented neither a danger to the community nor a risk of flight. *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community"). Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high

[5] Respondent does not indicate on what date immigration authorities paroled petitioner into the United States. I note that he has been in this country since 1998. He obtained a tax ID number in 2000, and a work permit and social security number in 2014. ECF No. 1 at 6. Accordingly, I find that petitioner has been on some kind of immigration parole since 2014, and likely much earlier.

given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G.G. v. Kaiser*, No. 1:25-cv-1471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-0801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Respondent offers no evidence or argument indicating that any procedural safeguards have been employed following petitioner's re-detention; more generally, they give the court no reason to believe that any efforts have been made to prevent erroneous deprivation of petitioner's liberty. *See id*. On the contrary, the fact that the government maintains that petitioner is subject to mandatory detention and has denied him a bond hearing indicates that it has not made sufficient efforts to prevent an erroneous deprivation of his liberty. Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without . . . a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted). Indeed, respondent has provided no information about the additional burden that would fall on it as a result of being required to provide a bond hearing. *See* ECF No. 6. "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's re-detention without a bond hearing violates his due process rights. Given this finding, I must determine the appropriate remedy. Petitioner seeks immediate release. ECF No. 1 at 7. Respondent indicates it has no objection to a bond hearing. ECF No. 6 at 1-2. Respondent states that this case is "in the category for immigration habeas cases for which the Court has typically ordered a bond hearing. . . ." *Id.* The only basis respondent raises for a bond hearing is that he "has criminal history." *Id.*

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). To satisfy due process, "the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). In some circumstances, however, the Court has held that a post-deprivation hearing satisfies due process, such as where there is "the necessity of quick action by the State or the impracticality of providing any predeprivation process." *Id*. at 128 (cleaned up).

Here, respondent does not explain in what way there was "the necessity of quick action" by ICE such that petitioner could not have been provided a pre-deprivation hearing. *See Zinermon*, 494 U.S. at 128. On January 29, 2026, petitioner was arrested by local police, but, on February 13, 2026, prosecutors elected not to pursue any case arising out of that arrest. ECF No. 6 at 11, 18. The decision not to file the case occurred prior to ICE re-detaining petitioner on February 14, 2026. ECF No. 6 at 10. Petitioner has no other criminal history or law enforcement contact. Respondent does not argue that petitioner is a danger or a flight risk. *See* ECF No. 5. Although respondent attached a document regarding petitioner's arrest, it does not explain how this relates to danger or flight risk. *Id.*

The fact that no charges were filed decreases any effect of the prior arrest, especially where petitioner has no other criminal history during his decades in the United States. In

analogous situations, courts have held that while an arrest for certain crimes subjects an individual to mandatory detention under 8 U.S.C. § 1226(c), such detention becomes unconstitutional after prosecutors decline to bring charges stemming from the arrest. *See E.C. v. Noem*, No. 2:25-cv-1789-RFB-BNW, 2025 WL 2916264, at *11 (D. Nev. Oct. 14, 2025) ("And if § 1226(c) mandates [p]etitioner's detention, with no regard for the fact that he was acquitted of all criminal charges through the procedural protections provided in the underlying criminal proceedings, that provision would be unconstitutional as applied to [p]etitioner."); *Singh v. Chestnut*, No. 1:26-cv-0546-DJC-AC, 2026 WL 266021, at *2 (E.D. Cal. Feb. 2, 2026) ("As [p]etitioner notes, however, requiring mandatory detention because of a mere arrest for which prosecutors concluded they did not have sufficient evidence to charge [p]etitioner with a crime, raises serious due process concerns."). I am persuaded by this reasoning.

Further, while petitioner was in local custody when he was re-detained, courts have found that a pre-deprivation hearing is still required where the petitioner is initially arrested by local law enforcement and then transferred to ICE custody. *See J. O. J.L. v. Blanche*, No. 1:26-cv-4142-DAD-JDP, 2026 WL 1745732, at *4 (E.D. Cal. June 17, 2026), *report and recommendation adopted*, 2026 WL 1832766, at *1 (E.D. Cal. June 25, 2026); *Osorto v. Warden of Mesa Verde Det. Facility*, No. 1:26-cv-2915-DJC-JDP, 2026 WL 1224248, at *4 (E.D. Cal. May 5, 2026), *report and recommendation adopted*, 2026 WL 1330554 (E.D. Cal. May 13, 2026); *Adamchuk v. Casey*, No. 3:26-cv-1149-RBM-VET, 2026 WL 785532, at *1-2 (S.D. Cal. Mar. 20, 2026).

Under these circumstances, I find that the "typical remedy" of release, *see Munaf*, 553 U.S. at 693, is appropriate because the government has not provided a lawful justification for re-detaining petitioner without a pre-deprivation hearing. Where a petitioner is entitled to a pre-deprivation hearing, courts have found that "[t]he appropriate relief . . . is their immediate release from custody, and to be provided with relief returning them to status quo ante, i.e., the last uncontested status which preceded the pending controversy." *Cardin Alvarez v. Rivas*, No. 25-cv-2943-PHX-GMS, 2025 WL 2898389, at *21 (D. Ariz. Oct. 7, 2025), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025).

The government's erroneous application of section 1225(b) to petitioner also supports immediate release, as petitioner was not given the opportunity for a bond hearing to which he is statutorily entitled. *See Cortes Cortes v. Warden of the Golden State Annex Det. Facility*, No. 1:26-cv-6609-DC-JDP, ECF No. 8 at 3 (E.D. Cal. Aug. 25, 2026); *Morillo v. Albarran*, No. 1:25-cv-1533-DJC-AC, 2025 WL 3190899, at *5 (E.D. Cal. Nov. 15, 2025). In *Feng v. Lyons*, the court held that a delay "in providing the statutorily mandated bond hearing violates [a petitioner's] due process rights" and found that the "[p]rovision of a bond hearing after months of detention without the opportunity to seek release on bond cannot be said to satisfy due process where that bond hearing is a matter of statutory right." No. 1:26-cv-0235-DJC-SCR, 2026 WL 472635, at *1 (E.D. Cal. Feb. 19, 2026) (citations omitted).

Petitioner's due process rights have been violated such that the appropriate relief is immediate release from custody, thereby returning him to the "status quo ante." *See Cardin Alvarez*, 2025 WL 2898389, at *21.

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondent be ordered to immediately release petitioner (A-Number: 205-354-745) from its custody on the same conditions as his prior release. Respondent shall not impose any additional restrictions on petitioner, unless that is determined to be necessary at a future pre-deprivation hearing. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a constitutionally compliant pre-deprivation bond hearing before a neutral arbiter at which the government bears the burden of proving flight risk or danger by clear and convincing evidence. This order does not address the circumstances in which respondent may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

3. The Clerk of Court be directed to serve California City Detention Facility with a copy of this order.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within three days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within three days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: August 31, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE